**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

WHIRLPOOL CORPORATION,
WHIRLPOOL PROPERTIES, INC., and
MAYTAG PROPERTIES, LLC,

       Plaintiffs,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

       Defendants.
_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, Whirlpool Corporation, Whirlpool Properties, Inc., and Maytag Properties, LLC (collectively, "Plaintiffs" or "Whirlpool") hereby sue Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants"). Defendants are promoting, offering for sale, selling, and distributing goods bearing counterfeits and confusingly similar imitations of Plaintiffs' trademarks within this district through various Internet based e-commerce stores operating under the seller names set forth on Schedule "A" (the "E-commerce Store Names"). In support of their claims, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.    This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law.  Accordingly, this Court has subject

matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.     Defendants are subject to personal jurisdiction in this district, because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district, through at least their Internet based e-commerce stores accessible and doing business in Florida and operating under the E-commerce Store Names.  Alternatively, based on their overall contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, non-residents in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## THE PLAINTIFFS

4.     Plaintiff Whirlpool Corporation is a corporation organized and existing under the laws of the state of Delaware with a principal place of business at 2000 North M-63, Benton Harbor, Michigan.  Plaintiff Whirlpool Corporation is a leading global manufacturer and highly regarded appliance company.  Plaintiff Whirlpool Corporation, through various subsidiary companies, manufactures and distributes throughout the world, including within this district, a

variety of home appliances and accessories under the Whirlpool®, KitchenAid®, Maytag®, and EveryDrop® brands using multiple common law and federally registered trademarks, including those identified below.

5.     Plaintiff Whirlpool Properties, Inc. is a Michigan corporation having its principal place of business at 500 Renaissance Drive, Suite 101, Saint Joseph, Michigan.  Whirlpool Properties, Inc. is a wholly-owned subsidiary of Whirlpool Corporation.

6.     Plaintiff Maytag Properties, LLC is a limited liability company organized and existing under the laws of the state of Michigan with a principal place of business at 500 Renaissance Drive, Suite 101, Saint Joseph, Michigan. Whirlpool Corporation wholly owns Maytag Properties, LLC indirectly through intervening subsidiaries.

7.     Plaintiffs Whirlpool Properties, Inc. and Maytag Properties, LLC, own, manage, enforce, license, and maintain intellectual property, including trademarks. Plaintiffs Whirlpool Properties, Inc. and Maytag Properties, LLC license certain trademark rights to Plaintiff Whirlpool Corporation, including the federal trademark registrations at issue herein.

8.     Goods bearing Plaintiffs' registered trademarks set forth below are offered for sale and sold through various channels of trade within the State of Florida, including this district, and throughout the United States.  Defendants, through the offer for sale and sale of goods using counterfeit and infringing versions of Plaintiffs' branded products are directly, and unfairly, competing with each Plaintiffs' economic interests in the United States, including within the State of Florida, and causing each Plaintiff irreparable harm and damage within this jurisdiction.

9.     Like many other famous trademark owners, Plaintiffs suffer ongoing daily and sustained violations of their respective trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiffs'

trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores. The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with Plaintiffs' respective names and associated trademarks, as well as the destruction of the legitimate market sector in which they operate.

10.     To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Plaintiffs expend significant resources in connection with trademark enforcement efforts. The exponential growth of counterfeiting over the Internet, including through online marketplace platforms, has created an environment that require companies, such as Plaintiffs, to expend significant resources across a wide spectrum of efforts to protect both consumers and themselves from the confusion and the erosion of the goodwill embodied in Plaintiffs' brands.

## THE DEFENDANTS

11.     Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to consumers as well as shipping and fulfillment centers, warehouses, and/or storage facilities within the United States to redistribute their products from that location using domestic e-commerce shipping services. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of at least the commercial Internet based e-commerce stores under the E-commerce Store Names.

12.     Upon information and belief, Defendants use aliases in connection with the operation of their businesses.

13.     Defendants are the past and present controlling forces behind the sale of products bearing counterfeits and infringements of Plaintiffs' trademarks as described herein.

14.     Defendants directly engage in unfair competition with Plaintiffs by advertising, offering for sale, and selling goods each bearing and/or using counterfeits and infringements of one or more of Plaintiffs' trademarks to consumers within the United States and this district through e-commerce stores using, at least, the E-commerce Store Names, as well as additional e-commerce store or seller identification aliases not yet known to Plaintiffs. Defendants have purposefully directed some portion of their unlawful activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing branded versions of Plaintiffs' goods into the State.

15.     Defendants have registered, established or purchased, and maintained their E-commerce Store Names.  Defendants may have engaged in fraudulent conduct with respect to the registration or maintenance of the E-commerce Store Names by providing false and/or misleading information during the registration or maintenance related to their respective E-commerce Store Name.

16.     Defendants will likely continue to register or acquire new e-commerce store names or other aliases, as well as related payment accounts, for the purpose of offering for sale and/or selling goods bearing counterfeit and confusingly similar imitations of one or more of Plaintiffs' trademarks unless preliminarily and permanently enjoined.

17.     Defendants' E-commerce Store Names, associated payment accounts, and any other alias e-commerce store or seller identification names used in connection with the sale of

counterfeit and infringing goods using one or more of Plaintiffs' trademarks are essential components of Defendants' online activities and are the means by which Defendants further their counterfeiting and infringement schemes and cause harm to Plaintiffs. Moreover, Defendants are using one or more of Plaintiffs' respective famous brand names and/or associated trademarks to drive Internet consumer traffic to their e-commerce stores operating under the E-commerce Store Names, thereby increasing the value of the E-commerce Store Names, and decreasing the size and value of Plaintiffs' legitimate marketplace and intellectual property rights at Plaintiffs' expense.

## COMMON FACTUAL ALLEGATIONS

### Whirlpool Properties, Inc.'s Business and Trademark Rights

18.     Plaintiff Whirlpool Properties, Inc. ("Whirlpool") is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively the "Whirlpool Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|---|---|---|---|
| KITCHENAID | 2,520,284 | December 18, 2001 | IC 037 – installation, repair and maintenance of hand and stand electric beating and mixing machines, coffee making machines, toasters, food processors, blenders, dishwashers, refrigerators, freezers, combination refrigerator/freezers, ranges, ovens and surface units, microwave ovens, cooktops, exhaust hoods, ventilating fans, wine cellars, water supply units for dispensing cold water and ice from refrigerators, food waste disposers, food waste and trash compactors, ice makers, electrically operated hot water dispensers, and compressors for refrigerators. |

6

| | | | |
|---|---|---|---|
| **KitchenAid** | 2,520,285 | December 18, 2001 | IC 037 – installation, repair and maintenance of hand and stand electric beating and mixing machines, coffee making machines, toasters, food processors, blenders, dishwashers, refrigerators, freezers, combination refrigerator/freezers, ranges, ovens and surface units, microwave ovens, cooktops, exhaust hoods, ventilating fans, wine cellars, water supply units for dispensing cold water and ice from refrigerators, food waste disposers, food waste and trash compactors, ice makers, electrically operated hot water dispensers, and compressors for refrigerators. |
| WHIRLPOOL | 4,983,312 | June 21, 2016 | IC 011 – water filtration and purification units and replacement cartridges and filters therefor for refrigerators. |
| EVERYDROP | 5,232,741 | June 27, 2017 | IC 011 – refrigerator water filters; water filtration pitchers sold empty and portable water filter bottles sold empty. |
| Whirlpool | 5,921,312 | November 26, 2019 | IC 011 – heating, cooling and ventilating apparatus, namely, furnaces, gas water heaters, conversion burners, heat pumps, air conditioning units, condensing units, evaporator units, evaporator coils, central humidifiers, central air cleaners, furnace boilers and heat exchangers; Clothes drying machines; Refrigerators, freezers, combination refrigerator-freezers; Water softening apparatus and installations, air conditioners, dehumidifiers, cooking ovens, cooking ranges, gas and electric cooktops, microwave ovens for cooking and range exhaust hoods; Freezer chests; Water purification and delivery systems comprising standalone water cabinets; Built-in bottled water dispensing apparatus for hot or chilled water; Domestic water filtration units; Reverse osmosis units for purification of water; Appliances |

| | | | for domestic and commercial use, namely, combination garment wrinkle and odor remover and garment dryer; Apparatus and appliances for domestic use, namely, air purifying units, air filters; Gas and electric water heaters; Water conditioning units, water softening apparatus and installations, water coolers, water chillers, countertop water filtration devices, home water filtration devices and water faucet filters; Refrigerator water filters. |
|---|---|---|---|
| everydrop | 6,043,859 | April 28, 2020 | IC 011 – refrigerator water filters. |

The Whirlpool Marks are used in connection with the manufacture and distribution of high-quality goods in the classes identified above.  True and correct copies of the Certificates of Registration for the Whirlpool Marks are attached hereto as Composite Exhibit "1."

19.     The Whirlpool Marks have been used extensively and continuously in interstate commerce to identify and distinguish Whirlpool's high-quality goods for an extended period of time.

20.     The Whirlpool Marks have been used in commerce by Whirlpool long prior in time to Defendants' use of copies of those Marks.  The Whirlpool Marks have never been assigned or licensed to any of the Defendants in this matter.

21.     The Whirlpool Marks are symbols of Whirlpool's high quality, reputation and goodwill and have never been abandoned.  Whirlpool has carefully monitored and policed the use of the Whirlpool Marks.

22.     Whirlpool expends substantial resources developing, advertising and otherwise promoting the Whirlpool Marks in conjunction with a variety of home appliance products.

23.     Further, Whirlpool extensively uses, advertises, and promotes the Whirlpool Marks in the United States in association with the sale of high-quality goods. Whirlpool expends substantial resources promoting the Whirlpool Marks and products bearing the Whirlpool Marks.

24.     As a result of Whirlpool's efforts, members of the consuming public readily identify merchandise bearing or sold using the Whirlpool Marks as being high quality goods sponsored and approved by Whirlpool.

25.     Accordingly, the Whirlpool Marks have achieved secondary meaning among consumers as identifiers of high-quality goods.

26.     Genuine goods bearing and/or using the Whirlpool Marks are widely legitimately advertised, promoted, and offered for sale by Whirlpool and its related companies, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Whirlpool's overall marketing and consumer education efforts. Thus, Whirlpool expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies. Those strategies allow Whirlpool and its authorized retailers to educate consumers fairly and legitimately about the value associated with the Whirlpool brand and the goods sold thereunder, and the problems associated with the counterfeiting of Whirlpool's trademarks.

**Maytag Properties, LLC's Business and Trademark Rights**

27.     Plaintiff Maytag Properties, LLC ("Maytag") is the owner of all rights in and to the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Maytag Mark"):

| Trademark | Registration Number | Registration Date | Class(es) / Good(s) |
|-----------|--------------------|--------------------|---------------------|
| MAYTAG | 5,777,058 | June 11, 2019 | IC 011 – water treatment equipment, namely, water filtration units and reverse osmosis units; water softening apparatus and installations; water purification and filtration apparatus and replacement cartridges and filters therefor. |

The Maytag Mark is used in connection with the manufacture and distribution of high-quality goods in the class identified above.  A true and correct copy of the Certificate of Registration for the Maytag Mark is attached hereto as Exhibit "2."

28.    The Maytag Mark has been used in interstate commerce to identify and distinguish Maytag's high-quality goods for an extended period of time.

29.    The Maytag Mark has been used in commerce by Whirlpool long prior in time to Defendants' use of copies of that Mark.  The Maytag Mark has never been assigned or licensed to any of the Defendants in this matter.

30.    The Maytag Mark is a symbol of Maytag's high quality, reputation and goodwill and has never been abandoned.  Whirlpool has carefully monitored and policed the use of the Maytag Mark.

31.    Whirlpool has expends substantial resources developing, advertising, and otherwise promoting the Maytag Mark in conjunction with a variety of home appliance products.

32.    Further, Whirlpool extensively uses, advertises, and promotes the Maytag Mark in the United States in association with the sale of high-quality goods. Whirlpool has expended significant resources promoting the Maytag Mark and products bearing the Maytag Mark.

33.     As a result of Maytag's efforts, members of the consuming public readily identify merchandise bearing or sold under the Maytag Mark as being high-quality goods sponsored and approved by Whirlpool.

34.     Accordingly, the Maytag Mark has achieved secondary meaning among consumers as an identifier of high-quality goods.

35.     Genuine goods bearing and/or using the Maytag Mark are widely legitimately advertised, promoted, and offered for sale by Whirlpool and its related companies, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Whirlpool's overall marketing and consumer education efforts. Thus, Whirlpool expends significant monetary and other resources on Internet marketing and consumer education, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies. Those strategies allow Whirlpool and its authorized retailers to educate consumers fairly and legitimately about the value associated with the Maytag brand and the goods sold thereunder, and the problems associated with the counterfeiting of Maytag's trademark.

**Defendants' Infringing Activities**

36.     Defendants are each promoting, advertising, distributing, offering for sale, and selling goods, including but not limited to water filtration units, such as water filters, in interstate commerce bearing counterfeits and confusingly similar imitations of one or more of the Whirlpool Marks and/or the Maytag Mark (collectively, the "Counterfeit Goods") through at least the Internet based e-commerce stores operating under the E-commerce Store Names. Specifically, Defendants are each using the Whirlpool Marks and the Maytag Mark (collectively, "Plaintiffs' Marks") to initially attract online consumers and drive them to Defendants' e-

commerce stores operating under the E-commerce Store Names.  Defendants are each using identical copies of one or more of Plaintiffs' Marks for different quality goods. Plaintiffs have used their respective Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiffs' products.

37.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiffs' genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, offering for sale, and/or selling substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiffs despite Defendants' knowledge that they are without authority to use Plaintiffs' Marks.  Defendants' actions are likely to cause confusion of consumers who will believe all of Defendants' goods offered for sale in or through Defendants' e-commerce stores are genuine goods originating from, associated with, and/or approved by Plaintiffs.

38.     Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via at least the e-commerce stores under the E-commerce Store Names.  In so doing, Defendants improperly and unlawfully use one or more of Plaintiffs' Marks without authority.

39.     Defendants are concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of one or more of Plaintiffs' Marks. Specifically, Defendants are using counterfeits and infringements of one or more of Plaintiffs' famous names and Plaintiffs' Marks, or variations thereof, to make their e-commerce stores selling unauthorized goods appear more relevant and attractive to consumers searching for both Plaintiffs' and non-Plaintiffs' goods

and information online. By their actions, Defendants are jointly contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Plaintiffs' genuine goods. Defendants are causing individual, concurrent and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiffs' Marks, and/or (iii) increasing Plaintiffs' overall cost to market their goods and educate consumers about their brands via the Internet.

40.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiffs and the consuming public for Defendants' own benefit.

41.     At all times relevant hereto, Defendants have had full knowledge of Plaintiffs' respective ownership of Plaintiffs' Marks, including their exclusive rights to use and license such intellectual property and the goodwill associated therewith.

42.     Defendants' use of Plaintiffs' Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiffs' consent or authorization.

43.     Defendants are engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' respective goodwill and reputations.

44.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive consumers, the public, and the trade into believing there is a connection or association between Plaintiffs' genuine goods and Defendants' Counterfeit Goods, which there is not.

45.     Given the visibility of Defendants' various e-commerce stores and the similarity of their concurrent actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Plaintiffs and the overall consumer market in which they operate because of Defendants' concurrent actions.

46.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Plaintiffs.

47.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their E-commerce Store Names, and any other alias e-commerce store names being used and/or controlled by them.

48.     Further, Defendants, upon information and belief, are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiffs.

49.     Plaintiffs have no adequate remedy at law.

50.     Plaintiffs are suffering irreparable injury and have suffered substantial damages because of Defendants' unauthorized and wrongful use of Plaintiffs' Marks.  If Defendants' intentional counterfeiting and infringing, and unfairly competitive activities are not preliminarily

and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed while Defendants wrongfully earn a substantial profit.

51.     The harm and damages sustained by Plaintiffs has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

<u>**COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)**</u>

52.     Plaintiffs hereby adopt and re-allege the factual allegations set forth in Paragraphs 1 through 51 above.

53.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of Plaintiffs' Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

54.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing counterfeits and/or infringements of one or more of Plaintiffs' Marks.  Defendants are continuously infringing and inducing others to infringe Plaintiffs' Marks by using one or more of them to advertise, promote, offer to sell, and sell counterfeit and infringing versions of Plaintiffs' branded goods.

55.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

56.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages and irreparable harm to Plaintiffs and are unjustly enriching Defendants with profits at Plaintiffs' expense.

57.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of Plaintiffs' Marks in violation of Plaintiffs' rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

58.     Plaintiffs have each suffered and will continue to suffer irreparable injury and damages while Defendants are unjustly profiting due to their above described activities if Defendants are not preliminarily and permanently enjoined.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

59.     Plaintiffs hereby adopt and re-allege the factual allegations set forth in Paragraphs 1 through 51 above.

60.     Defendants' Counterfeit Goods bearing, offered for sale and sold using copies of one or more of Plaintiffs' Marks have been widely advertised and offered for sale throughout the United States via the Internet.

61.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of at least one of Plaintiffs' Marks are virtually identical in appearance to Plaintiffs' genuine goods. Accordingly, Defendants' activities are likely to cause confusion among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

62.     Defendants have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or symbols and designs, which falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment.

63.     Defendants have each authorized infringing uses of one or more of Plaintiffs' Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.  Some Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

64.     Additionally, Defendants are simultaneously using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for space within organic and paid search engine and social media results.  Defendants are thereby jointly (i) depriving Plaintiffs of valuable marketing and educational space online which would otherwise be available to Plaintiffs and (ii) reducing the visibility of Plaintiffs' genuine goods on the World Wide Web and across social media platforms.

65.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

66.     Plaintiffs have no adequate remedy at law and have sustained both individual and indivisible injury and damages caused by Defendants' concurrent conduct. Absent the entry of an injunction by this Court, Plaintiffs will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages, while Defendants are unjustly profiting due to their above described activities.

### COUNT III - COMMON LAW UNFAIR COMPETITION.

67.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 51 above.

68.     This is an action against Defendants based on their promotion, advertisement, distribution, offering for sale and/or sale of goods bearing and/or using marks that are virtually

identical to one or more of Plaintiffs' Marks in violation of Florida's common law of unfair competition.

69.     Specifically, Defendants are each promoting and otherwise advertising, selling, offering for sale and distributing counterfeit and infringing versions of Plaintiffs' branded goods. Defendants are also each using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.

70.     Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of Plaintiffs' Marks.

71.     Plaintiffs have no adequate remedy at law and have suffered and will continue to suffer irreparable injury and damages because of Defendants' concurrent actions while Defendants are unjustly profiting due to their above-described activities if Defendant is not preliminarily and permanently enjoined.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

72.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 51 above.

73.     Plaintiffs are the respective owners of all common law rights in and to their respective Plaintiffs' Marks.

74.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing one or more of Plaintiffs' Marks.

75.     Specifically, each Defendant is promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of one or more of Plaintiffs' Marks.

76.     Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods bearing Plaintiffs' Marks.

77.     Plaintiffs have no adequate remedy at law and have suffered and will continue to suffer irreparable injury and damages because of Defendants' concurrent actions while Defendants are unjustly profiting due to their above-described activities if Defendant is not preliminarily and permanently enjoined.

## PRAYER FOR RELIEF

78.     WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting Plaintiffs' Marks; from using Plaintiffs' Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs; from falsely representing themselves as being connected with Plaintiffs, through sponsorship or association, or engaging in any act that is likely to falsely

cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Plaintiffs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of Plaintiffs' Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiffs, or in any way endorsed by Plaintiffs and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiffs' name or trademarks and from otherwise unfairly competing with Plaintiffs.

b.    Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks.

c.    Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiffs' request, those acting in concert or participation as service providers to Defendants, who have notice of the injunction, cease hosting, facilitating access to, or providing any supporting service to any and all E-commerce Store Names, including but not limited to any other alias e-commerce store names through which Defendants engage in the promotion, offering for sale and/or sale of goods using counterfeits and/or infringements of Plaintiffs' Marks.

     d.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Plaintiffs to serve an injunction issued by the Court on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses which are or have been used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks.

     e.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Plaintiffs' election, transferring the E-commerce Store Names and any other e-commerce store names used by Defendants to engage in their counterfeiting of Plaintiffs' Marks at issue to Plaintiffs' control so they may no longer be used for unlawful purposes.

     f.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Plaintiffs to serve the injunction on the any Internet marketplace operators and/or administrators for the E-commerce Store Names to disclose to Plaintiffs the true identities and contact information for the registrants of the E-commerce Store Names.

     g.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiffs' request, any messaging service and Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court permanently remove any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks via the e-commerce store names operating under the E-commerce Store Names, and upon Plaintiffs' request, any other listings and images of goods bearing and/or using counterfeits and/or

infringements of Plaintiffs' Marks associated with or linked to the same sellers or linked to any other alias e-commerce store names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks.

      h.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and this Court's inherent authority that, upon Plaintiffs' request, Defendants and any Internet marketplace website operators and/or administrators of the E-commerce Store Names who are provided with notice of an injunction issued by the Court, immediately cease fulfillment of and sequester all goods of each Defendant bearing one or more of Plaintiffs' Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiffs.

      i.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiffs' request, Defendants and the authorized representative, officer, managing operator and/or administrator for any Internet marketplace platform, e-commerce shipping partner, fulfillment center, warehouse, and/or storage facility who are provided with notice of the injunction immediately cease fulfillment of and sequester all goods of each Defendant bearing one or more of Plaintiffs' Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiffs, together with any and all documents, information, paper and/or electronic data, and/or other tangible items pertaining to all services provided to or on behalf of each Defendant.

      j.     Entry of an Order requiring, upon Plaintiffs' request, Defendants to request in writing permanent termination of any messaging services, e-commerce store names,

usernames, and social media accounts they own, operate, or control on any messaging service, e-commerce marketplace, and social media website.

       k.     Entry of an Order requiring Defendants to account to and pay Plaintiffs for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or that Plaintiffs be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

       l.     Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiffs' costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

       m.     Entry of an Order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Plaintiffs' request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, e-commerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, and their related companies and affiliates, identify, restrain, and be required to surrender to Plaintiffs all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Names, or other alias seller identification or e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

n.      Entry of an Order requiring Defendants, at Plaintiffs' request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

o.      Entry of an award of pre-judgment interest on the judgment amount.

p.      Entry of an Order for any further relief as the Court may deem just and proper.

DATED: April 30, 2025.                 Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

**By: <u>Stephen M. Gaffigan</u>**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.cloud
E-mail: Leo@smgpa.cloud
E-mail: Raquel@smgpa.cloud

Attorneys for PLAINTIFFS

## SCHEDULE "A"

**[This page is the subject of Plaintiffs' Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**